IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** : | |
| : | **CRIMINAL ACTION** |
| **v.** : | |
| : | **07-0042-2** |
| **SUNNI ALI** : | |

## MEMORANDUM OPINION

**Goldberg, J.**                                                                                                       **June 25, 2024**

On November 1, 2023, several amendments to the United States Sentencing Guidelines went into effect, some of which expanded what could qualify as "extraordinary and compelling reasons" to grant relief under the compassionate release statute, 18 U.S.C. § 3582(c)(1)(A). Sunni Ali has filed a Motion for Compassionate Release, which implicates those amendments and the thirty-two-year sentence he received in 2009. Upon consideration of those amendments and the relevant sentencing factors of 18 U.S.C. § 3553(a), I will grant Ali's Motion.

**I.      FACTUAL BACKGROUND**

On February 4, 2008, Ali pled guilty to one count of conspiracy to interfere with interstate commerce by robbery in violation of 18 U.S.C. § 1951(a), three counts of interference with interstate commerce by robbery in violation of 18 U.S.C. § 1951(a), and three counts of using and carrying a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c). These charges stem from three armed robberies of restaurants committed from January to April of 2005. Ali planned the robberies with his co-defendant. During the first two robberies, Ali—who was working at the restaurant—notified his co-defendant when the restaurant employees had access to cash, while the co-defendant, brandishing a handgun, accosted the employees. During the third robbery, Ali and his co-defendant, both armed with handguns, robbed a restaurant located inside the King of Prussia Mall after it had closed for the day while one of the store's employees was counting the money.

1

At the time of his arrest for these crimes, Ali had an extensive criminal history. From 1979, when he was nineteen years old, to 1990, when he was thirty years old, he was convicted numerous times, mostly for theft offenses. In 1994, he committed several demand note bank robberies and was sentenced to 120 months' imprisonment. The Government acknowledges that Ali's criminal history appears to have been motivated by his long struggle with substance abuse. (Govt. Opp'n, ECF No. 201, p. 3.)

At sentencing on February 24, 2009, before the Honorable John P. Fullam, the Government moved to dismiss one of the three § 924(c) counts, which resulted in a reduction of the mandatory minimum consecutive sentence from fifty-seven to thirty-two years.[1] Judge Fullam then sentenced Ali to thirty-two years imprisonment, five years' supervised release, restitution of $7,269.71, and a special assessment of $600.[2]

Ali is currently serving his sentence at FCI Allenwood, with a minimum release date of April 16, 2034. He has served approximately seventeen years and, according to the Government, has credit for good conduct time of approximately twenty-nine months, for a total time of approximately nineteen and a half years of his sentence completed.[3] The Government acknowledges that Ali has an excellent disciplinary record with no infractions, despite his lengthy incarceration, and that he has remained entirely drug-free. (Govt. Opp'n, ECF No. 201, pp. 3–4.) Ali has also complied with his inmate financial

---

[1] Under the previous version of 18 U.S.C. § 924(c), a first § 924(c) conviction carried with it a mandatory minimum sentence of seven years, and any subsequent § 924(c) conviction in the same indictment carried a mandatory minimum sentence of twenty-five years, each to be served consecutively. As such, Ali's three originally-charged § 924(c) counts carried a minimum of fifty-seven years' imprisonment (seven on the first charge plus twenty-five on each of the second and third charges). When one of the § 924 charges was dropped, Ali faced a mandatory minimum of only thirty-two years (seven on the first charge plus twenty-five on the second charge).

[2] The sentence on the two substantive robbery counts ran concurrently with the mandatory sentence of thirty-two years on the two § 924(c) counts.

[3] These numbers may be slightly different given the passage of time between the briefing and this Opinion.

2

responsibility plan by having money deducted monthly from his prison account. Presently, he is sixty-three years old.

## II. DISCUSSION

The compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act on December 21, 2018, provides in pertinent part that:

> **(c) MODIFICATION OF AN IMPOSED TERM OF IMPRISONMENT.—** The court may not modify a term of imprisonment once it has been imposed except that—
>
> **(1)** in any case—
>
> **(A)** the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> **(i)** extraordinary and compelling reasons warrant such a reduction . . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

Id.

Thus, a sentencing court may reduce an inmate's term of imprisonment only where four conditions are met: "(1) the inmate must satisfy an administrative exhaustion requirement; (2) the court must find that extraordinary and compelling reasons warrant a reduction; (3) any reduction granted by the court must be consistent with any applicable policy statements issued by the Sentencing Commission; and (4) the proposed reduction must be consistent with the sentencing factors outlined in 18 U.S.C. § 3553(a)." United States v. Georgiou, No. 09-cr-088, 2021 WL 1122630, at *24 (E.D. Pa. Mar. 23, 2021) (internal quotation marks omitted). Ultimately, the defendant has the burden to show

that he is entitled to a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1). United States v. Haynes, No. 17-cr-0042, 2020 WL 3895767, at *2 (D.V.I. July 7, 2020) (citing United States v. Jones, 836 F.3d 896, 899 (8th Cir. 2016) and United States v. Butler, 970 F.2d 1017, 1026 (2d Cir. 1992)).

### A. Exhaustion

As a threshold matter, I address whether Ali has exhausted his administrative remedies. Both a defendant and the Director of the Bureau of Prisons ("BOP") can move for compassionate release under § 3582(c)(1)(A), but before a defendant can bring such a motion directly, he must either fully exhaust all administrative rights to appeal a failure of the BOP to bring a motion on his behalf or wait for thirty days to lapse from the warden's receipt of a request that the BOP file such a motion. See, e.g., United States. v. Raia, 954 F.3d 594, 597 (3d Cir. 2020); see also United States v. Culbreth, No. 14-cr-235, 2020 WL 4504393, at *2 (M.D. Pa. Aug. 5, 2020). Judges cannot waive or excuse the statutory exhaustion requirement. See Raia, 954 F.3d at 597; Culbreth, 2020 WL 4504393, at *2.

Ali reports that, on November 20, 2020, while incarcerated at FCI Allenwood, he petitioned the warden for release via a request for reduction in sentence under 18 U.S.C. § 3582(c)(1)(A)(i), focusing on his underlying medical conditions. The warden responded on November 20, 2020, denying this request because Ali was not suffering from a terminal medical condition, was not totally disabled, and because there was no unusual vulnerability to COVID-19. The Government acknowledged that this denial satisfies the exhaustion requirement. (Govt. Opp'n, ECF No. 201, p 4.)

### B. Extraordinary and Compelling Reasons

In passing the First Step Act in 2018, Congress did not define the "extraordinary and compelling reasons" that could warrant compassionate release. Instead, it directed the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of examples." 28 U.S.C. § 994(t) (defining duties of the Sentencing Commission). Under this mandate, the Sentencing Commission promulgated Section 1B1.13 of the Sentencing Guidelines, entitled "Reduction in Term of Imprisonment under 18 U.S.C. §

3582(c)(1)(A) (Policy Statement)." The list of what constituted "extraordinary and compelling reasons" was limited to only a few narrowly-defined categories.

Over the next several years, the Sentencing Commission was without a quorum, and thus could not make any revisions to its Policy Statement. Eventually, in early 2023, the Sentencing Commission was able to promulgate a new Policy Statement under § 1B1.13. Under these most recent Amendments to the Sentencing Guidelines, which took effect on November 1, 2023, without any modification by Congress, the Sentencing Commission has significantly expanded the list of what constitutes extraordinary and compelling reasons that may justify compassionate release, only the following of which are relevant here:

> b. **Extraordinary and Compelling Reasons.**–Extraordinary and compelling reasons exist under any of the following circumstances or a combination thereof:
>
> (1) **Medical Circumstances of the Defendant.**–
>
> (A) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
> (B) The defendant is—
>
> (i) suffering from a serious physical or medical condition,
>
> (ii) suffering from a serious functional or cognitive impairment, or
>
> (iii) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> (C) The defendant is suffering from a medical condition that requires long-term or specialized medical condition that is not being provided and without which the defendant is at risk of serious deterioration in health or death.
>
> (D) The defendant presents the following circumstances—

> (i) the defendant is housed at a correctional facility affected or at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority;
>
> (ii) due to personal health risk factors and custodial status, the defendant is at increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak of infectious disease or the ongoing public health emergency described in clause (i); and
>
> (iii) such risk cannot be adequately mitigated in a timely manner.
>
> \* \* \*
>
> (6) **Unusually Long Sentence.**—If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

U.S.S.G. § 1B1.13.

Ali seeks relief under both sections cited above—§§ 1B1.13(b)(1) and (b)(6)—which he claims constitute extraordinary and compelling reasons for his release.

1. Medical Conditions

Ali first contends that his prison medical records establish that he has suffered from severe back pain and muscle weakness. He points out that he was recommended for back surgery on December 12, 2021, could not walk until January 29, 2022, and has still not responded "optimally to treatment." According to Ali, the surgery has left him with no muscle mass and weakness in his left arm, and he uses a wheelchair when needed. Ali also claims that he suffers from thyroid disease and high blood pressure for which he receives medication. He has also contracted COVID-19 on at least two occasions

6

and, given his age of sixty-three and underlying health conditions, faces substantial risks and exacerbated symptoms.

The Government acknowledges that BOP medical records reveal that Ali has hypertension, prediabetes, spinal stenosis, and disorder of the thyroid. It argues, however, that all of these conditions appear well-controlled "at this time" with medication and treatment provided by the institution. (Govt. Resp., ECF No. 201, at 4.) In addition, the Government notes that Ali is fully ambulatory and engages in all normal activities of daily living. Finally, the Government remarks that Ali has been vaccinated against COVID-19, having received the Moderna vaccine on March 1, 2021 and March 29, 2021.

My review of the medical records confirms that although Ali suffers from a multitude of medical conditions, they are not so dire as to rise to the level of extraordinary and compelling circumstances. As of the last medical note of April 20, 2022, Ali complained of back pain ongoing for four weeks that shoots down the back of his left leg. Notably, Ali denied mobility problems, had no history of falls over the last three months, did not use an ambulatory aid, and had normal gait. (ECF No. 202 at p. 2.)

Likewise, Ali is not unusually susceptible to serious illness or death from COVID-19, particularly given the fact that he has been vaccinated. Courts have routinely denied relief to an inmate who has either been vaccinated or denies vaccination. See e.g., United States v. Hannigan, No. 19-cr-373, 2022 WL 815449, at *15 (E.D. Pa. Mar. 17, 2022) (stating that vaccination against COVID-19 lessens the risk of serious illness or death, such that the threat of COVID-19, even combined with pre-existing medical conditions, does not constitute an extraordinary and compelling reason for compassionate release); United States v. Berry, No. 09-cr-116, 2021 WL 3537145, at *3 (E.D. Pa. Aug. 11, 2021) (finding that while the defendant suffered from conditions making him more vulnerable to serious illness or death from COVID-19, his vaccination status provided sufficient protection against the risks); United States v. Singh, 525 F. Supp. 3d 543, 548 (M.D. Pa. 2021) (concluding that because defendant's vaccination mitigated the risk of COVID-19, his underlying medical conditions of type 2

7

diabetes, obesity, and hypertension, no longer presented extraordinary and compelling reason for compassionate release).

Nonetheless, as part of the overall analysis of whether there are extraordinary and compelling circumstances, I note the combination of Ali's age (sixty-three), coupled with his numerous medical conditions and the deteriorating nature of his back pain.[4]  Ali still faces approximately thirteen to fourteen more years in prison, which will make him close to eighty at the time of release.  Given his multiple ailments, the full length of his imprisonment could feasibly constitute a life sentence.

       2.   <u>Extraordinarily Long Sentence Combined with Changes in the Sentencing Laws</u>

Ali next challenges the length of his sentence combined with changes in the sentencing laws. Ali was originally convicted of three counts of interference with interstate commerce by robbery and three § 924(c) counts.  At the time of sentencing, the Government moved to dismiss one of the § 924(c) counts, otherwise Ali would have faced a minimum sentence of fifty-seven years (seven years for the first count and twenty–five each on the next two counts, which were mandated to run consecutively). With this dismissal, Ali's mandatory minimum was thirty-two years, which is the sentence he received from Judge Fullam.

In recognition of the harshness of these stacking rules, which required that sentences on the § 924(c) charges run consecutively, Congress subsequently amended 18 U.S.C. § 924(c).  <u>See</u> First Step Act § 403(a).  Presently, stacking twenty-five-year minimums is no longer imposed for violations of § 924(c) in the same case.  <u>See</u> <u>United States v. Davis</u>, 588 U.S. 445, 450 n.1 (2019) (stating that "[i]n 2018, Congress changed the law so that, going forward, only a second § 924(c) violation committed 'after a prior [§ 924(c)] conviction . . . has become final' will trigger the 25-year minimum"). The Government concedes that, had Ali been sentenced under these amendments, his mandatory minimum

---

[4] In an April 5, 2024 letter (ECF No. 215), Ali's counsel noted that Ali was hospitalized in March due to a flare up in his back condition but has since been returned to F.C.I. Allenwood.

would have been only fourteen years (seven years on each of the § 924(c) counts instead of seven years on the first and twenty-five years on the second).[5] (Govt. Opp'n, ECF No. 201, pp. 14–15.) Congress, however, determined that the changes to the § 924(c) mandatory minimums would not apply to people who had already been sentenced. See United States v. Meehan, 798 F. App'x 739, 741 (3d Cir. 2020) (noting that "Congress made clear in § 403(b) that § 403(a) of the First Step Act applies only to defendants who had not been sentenced as of the date of enactment").

Prior to the issuance of the amendments at issue, the Third Circuit, in United States v. Andrews, 12 F.4th 255 (3d Cir. 2021), ruled that the nonretroactive changes contained in the First Step Act § 403(b) did not constitute an extraordinary and compelling circumstance. Id. at 261. It found that "considering the length of a statutorily mandated sentence as a reason for modifying a sentence would infringe on Congress's authority to set penalties" and there was nothing extraordinary about "leaving untouched the exact penalties that Congress prescribed and that a district court imposed for particular violations of a statute." Id. at 260–61. In reaching this decision, the Third Circuit weighed in on a circuit split regarding when, if ever, nonretroactive changes in law may be considered as extraordinary and compelling reasons within the meaning of § 3582(c)(1)(A).[6]

At the time Andrews was decided, however, the United States Sentencing Commission had not yet proposed or issued the amendments to U.S.S.G § 1B1.13. In crafting those amendments, the

---

[5] Indeed, even if the Government had not dropped one of the § 924(c) counts, Ali still would have faced only twenty-one years, instead of the thirty-two he received.

[6] Compare United States v. Ruvalcaba, 26 F.4th 14, 16, 26–28 (1st Cir. 2022) (holding that nonretroactive changes in sentencing law may be considered in light of a defendant's particular circumstances); United States v. McCoy, 981 F.3d 271, 286–88 (4th Cir. 2020) (same); United States v. Chen, 48 F.4th 1092, 1098 (9th Cir. 2022) (same); and United States v. McGee, 992 F.3d 1035, 1047–48 (10th Cir. 2021) (same), with United States v. Andrews, 12 F.4th 255, 260–62 (3d Cir. 2021), cert. denied, 142 S. Ct. 1446 (2022) (holding that nonretroactive changes in law are not permissible considerations); United States v. McMaryion, 64 F.4th 257, 259–60 (5th Cir. 2023) (same), withdrawn and superseded by 2023 WL 4118015 (5th Cir. June 22, 2023); United States v. McCall, 56 F.4th 1048, 1061 (6th Cir. 2022) (en banc) (same); United States v. King, 40 F.4th 594, 595 (7th Cir. 2022) (same); United States v. Crandall, 25 F.4th 582, 585–86 (8th Cir. 2022) (same); and United States v. Jenkins, 50 F.4th 1185, 1198, 1198 (D.C. Cir. 2022) (same).

Sentencing Commission specifically noted that it intended to "expand[] the list of specified extraordinary and compelling reasons that can warrant sentence reductions" while retaining the existing "other reasons" catchall. See https://www.ussc.gov/sites/default/files/pdf/amendment-process/official-text-amendments/202305_Amendments.pdf. The Commission went on to explain that the new subsection (b)(6) of § 1B1.13—enumerating "Unusually Long Sentence" as a potential "extraordinary and compelling" circumstance—was based on one of the original expressed purposes of § 3582(c)(1)(A), when it was in enacted in 1984: "to provide a narrow avenue for judicial relief from unusually long sentences." Id. (citing S. Rep. No. 98-225 (1983)). Cognizant of the existing circuit split, the Commission chose to "agree[] with the circuits that authorize a district court to consider non-retroactive changes in the law." But the Commission did so under a "tailored approach that narrowly limits that principle in multiple ways." Id. Under this "tailored approach," a defendant must have received an "unusually long sentence." Id. Additionally, the change in the law must have produced a gross disparity between the length of the sentence being served and the sentence likely to be imposed at the time the motion was filed. Id. Finally, the Commission recommended that application of the provision be limited to those who have served at least ten years of the sentence. Id. This Proposed Amendment went into effect on November 1, 2023, thereby explicitly setting forth the Commission's view that district courts should consider a nonretroactive change in sentence law for "unusually long sentences" when deciding compassionate release motions.[7]

The Commission's interpretation of "extraordinary and compelling" to include unusually long sentences falls well within the bounds of the Commission's authority granted to it under § 994(t). The

---

[7] I acknowledge of the recent Third Circuit decision in United States v. Stewart, No. 22-2770, 2023 WL 7509457 (3d Cir. Nov. 14, 2023), in which the Third Circuit reaffirmed the holding of Andrews that a district court's discretion to modify a sentence is cabined by the "extraordinary and compelling" reasons requirement of 18 U.S.C. § 3582(c)(1)(A)(i). The Stewart opinion, however, also noted that the Sentencing Commission's November 1, 2023 amendments to the Sentencing Guidelines expanded the list of "extraordinary and compelling reasons" that could warrant sentence reductions, and that the Court "may consider their effect on the validity of Andrews in an appropriate case." Id. at *2 n.2. As the facts of Stewart did not warrant consideration of that issue, the Third Circuit declined to do so at that time. Id.

Third Circuit has recognized that the term "extraordinary and compelling" is an "amorphous phrase," that can only be defined through sources such as dictionary definitions and policy statements from the Sentencing Commission. Andrews, 12 F.4th at 260. Given that ambiguity, together with Congress's express delegation to the Commission to define that phrase, the Commission reasonably interpreted "extraordinary and compelling" to include unusually long sentences which can be assessed in light of nonretroactive changes in law.

The Government, however, challenges the validity of this provision of the Guidelines amendment on two grounds. The Government first contends that although Congress directed the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for [a] sentence reduction" pursuant to 28 U.S.C. § 994(t), that mandate did not grant the Sentencing Commission "unbounded discretion" to exceed "the specific directives of Congress." United States v. LaBonte, 520 U.S. 751, 753, 757 (1997). The Government explains that the new provision in U.S.S.G § 1B1.13(b)(6) conflicts with Congressional directive, set forth in Section 403(b) of the First Step Act, which states: "[t]his section, and the amendments made by this section, shall apply to any offense that was committed before the date of enactment of this Act, if a sentence for the offense has not been imposed as of such date of enactment." Pub. L. 115-391, 132 Stat. 5222. The Government asserts that, by allowing a nonretroactive change in the law to constitute extraordinary and compelling circumstances, the Sentencing Commission is attempting to override that directive. The Government reasons that such a nonretroactive change to a statutory provision cannot constitute either an "extraordinary" or a "compelling" reason for a sentence reduction because that would undo the balance already struck by ordinary nonretroactivity principles.

Second, the Government asserts that § 1B1.13(6) conflicts with the structure and purpose of the Sentencing Reform Act, of which the compassionate release statute is a part. The overarching principle of federal sentencing law is that a "federal court generally 'may not modify a term of imprisonment once it has been imposed,'" Dillon v. United States, 560 U.S. 817, 819 (2010) (quoting 18 U.S.C. § 3582(c)),

11

and any reason sufficient to overcome that principle must be "extraordinary and compelling." 18 U.S.C. § 3582(c)(1)(A)(i). The Third Circuit has already held that "[t]he duration of a lawfully imposed sentence does not create an extraordinary or compelling circumstance." Andrews, 12 F.4th at 260. Thus, according to the Government, the Commission's interpretation of the statute as set forth in subsection (b)(6) is unreasonable and thus invalid. It contends that treating a nonretroactive change in the law as an "extraordinary and compelling reason" for a sentence reduction would allow defendants to end run the proper scheme for challenging their sentences—28 U.S.C. § 2255—in favor of a motion for compassionate release.

Since the enactment of the Guideline amendments, judges in this District have wrestled with these arguments in deciding whether § 1B1.13(b)(6) comports with the statutory authority and Third Circuit precedent. In United States v. Carter, No. 07-cr-374, 2024 WL 136777 (E.D. Pa. Jan. 12, 2024), the Court considered a compassionate release motion based on this provision where the defendant received a seventy-year sentence under the previous stacking rules for § 924(c) convictions but would have received only thirty-four years had he been sentenced following the 2018 First Step Act. Id. at *2. The Court found that the binding precedent in Andrews precluded reliance on § 1B1.13(b)(6), noting that Andrews found that "the imposition of a sentence that was not only permissible but statutorily required at the time is neither an extraordinary nor compelling reason to now reduce that sentence." Id. (quoting Andrews, 12 F.4th at 261). That Court remarked that because Andrews remains binding law in this Circuit, it foreclosed the defendant's argument that he is eligible for compassionate release pursuant to § 1B1.13(b)(6) of the Sentencing Commission's revised policy statement. Id.[8]

In United States v. Skeeters, No. 05-530, 2024 WL 992171 (E.D. Pa. Mar. 7, 2024), another judge in this District reached the opposite conclusion. There, the Court observed that the Third Circuit in Andrews, when finding that nonretroactive reductions are not extraordinary and compelling reasons

---

[8] Carter is currently on appeal to the Third Circuit.

12

under § 3582(c)(1)(A), explicitly remarked that "we are not saying that [such nonretroactive reductions] are always irrelevant to the sentence-reduction inquiry. If a prisoner successfully shows extraordinary and compelling circumstances, the current sentencing landscape may be a legitimate consideration for courts at the next step of the analysis when they weigh the § 3553(a) factors." Id. at *5 (quoting Andrews, at 261–62). The Court noted that Andrews was decided before the Sentencing Commission added § 1B1.13(b)(6) to the Guidelines and before a defendant was able to rely on that section in support of a motion for reduction in sentence. Id. Finding that Andrews did not reference or consider 28 U.S.C. § 994(t), which grants the Sentencing Commission authority to define the extraordinary and compelling reasons referenced in 18 U.S.C. § 3582(c)(1)(A)(i), the Court concluded that § 1B1.13(b)(6) is a reasonable policy statement that does not run afoul of Third Circuit precedent. Id.

The Skeeters decision also rejected the Government's argument that the Sentencing Commission cannot allow a reduction in sentence under § 1B1.13(b)(6) because Congress, in the First Step Act, provided that the changes in the sentencing for § 924(c) convictions did not apply retroactively to persons who had been previously sentenced. Id. at *6. The Court reasoned that, "in enacting this nonretroactive provision, Congress did not indicate any intention that it was amending § 3582(c)(1)(A)(i) to narrow its scope to preclude consideration of individualized extraordinary and compelling reasons for sentence reductions for defendants" who had already been sentenced. Id. "Nor did it give any indication that it was amending 28 U.S.C. § 994(t) to restrict the Commission's broad authority to define extraordinary and compelling reasons." Id. The Court ultimately held that "[p]reventing across–the-board matter-of-right retroactive sentencing reductions as Congress did here does not mean that it was prohibiting individualized sentence reductions for extraordinary and compelling reasons." Id. Otherwise, a court could never reduce a defendant's sentence for an extraordinary and compelling circumstances whether or not set forth in § 1B1.13. Because the Court found that Section 403(b) of the First Step Act, 18 U.S.C. § 3582(c)(1)(A), 28 U.S.C. § 994(t), and Section 1B1.13(b)(6) of the Sentencing Guidelines "are not in tension with one another and can all work

13

together in harmony," it rejected the Government's position that § 1B1.13 exceeded the Commission's authority.

Another Court in this District concurred with this reasoning in United States v. Moore, No. 14-cr-209, 2024 WL 1286935 (E.D. Pa. Mar. 26, 2024). That Court likewise noted that Andrews was decided before the Sentencing Commission passed the applicable policy statement in § 1B1.13(b)(6). Id. at *7. The Court agreed that § 1B1.13(b)(6) does not contradict Andrews because no applicable policy statement existed at the time, and Section 994(t) authorized the Sentencing Commission to issue policy statements defining extraordinary and compelling reasons warranting compassionate release. Id.[9]

Drawing from these thoughtful decisions, I now consider the interplay among: (1) the First Step Act's explicit statement that § 924(c) sentencing changes did not apply retroactively; (2) the broad authority given to the Sentencing Commission in § 994(t); (3) the Third Circuit's holding in Andrews—issued prior to the Amended U.S.S.G. § 1B1.13—that the duration of a lawfully imposed sentence and nonretroactive changes to the § 924(c) mandatory minimums cannot constitute extraordinary or compelling circumstances; and (4) the Commission's efforts to carve out a "narrow avenue of judicial relief" for unusually long sentences. Doing so, I agree with my colleagues who found that § 1B1.13 is a valid exercise of the Sentencing Commission's authority.

Primarily, I find harmony between Congress's determination that the changes to § 924(c) are not retroactive and the Sentencing Commission's policy statement that nonretroactive changes in the law can constitute "extraordinary and compelling circumstances" as part of the compassionate release analysis. In rendering the changes to § 924(c) nonretroactive, Congress seemingly meant only to prevent

---

[9] There remains nationwide split of authority on this issue. In a supplemental submission, the Government has comprehensively categorized the cases regarding the validity of § 1B1.13(b)(6) by circuits where, prior to the adoption of the November 1, 2023 amendment, the appellate court had previously determined that a nonretroactive amendment in sentencing law may present an "extraordinary and compelling" reason for compassionate release, circuits where the appellate court reached the opposite conclusion, and circuits where the issue had not been resolved. Within all three of those categories, the district courts have reached differing conclusions as to whether § 1B1.13(b)(6) is a valid exercise of the Sentencing Commission's authority.

across-the-board reductions for all defendants who had been sentenced prior to the change. Congress gave no indication that such nonretroactive changes could not be considered as part of an individualized review of a defendant's circumstances under 18 U.S.C. § 3582(c)(1)(A). Indeed, as noted above, one of the expressed purposes of section 3582(c)(1)(A) when it was in enacted in 1984 was to provide a "narrow avenue for judicial relief from unusually long sentences." S. Rep. No. 98-225 (1983). Consistent with that statement, section 1B1.13(b)(6) does not categorically permit any defendant sentenced under the prior version of § 924(c) to obtain compassionate release. Indeed, section 1B1.13(c) forbids such a categorical grant of compassionate release ("Except as provided in subsection (b)(6), a change in the law . . . shall not be considered for purposes of determining whether an extraordinary and compelling reason exists under this policy statement."). Rather, section 1B1.13(b)(6), as explained by the Commission, "permits non-retroactive changes in law . . . to be considered extraordinary and compelling reasons warranting a sentence reduction, *but only in narrowly circumscribed circumstances*." https://www.ussc.gov/sites/default/files/pdf/amendment-process/official-text-amendments/202305_Amendments.pdf at p. 10 (emphasis added). It requires a "case-specific, context-based determination and allows for relief only in cases where a defendant has served (i) at least 10 years (ii) of an unusually long sentence, and (iii) a change in law has produced a 'gross disparity' between the sentence being served and the sentence likely to be imposed at the time the motion is filed." United States v. Henderson, 08-cr-187, 2024 WL 881253 (E.D. Mo. Feb. 23, 2024). Even if a defendant meets these three criteria, section 1B1.13(b)(6) requires a "full consideration of the defendant's individualized circumstances" in order to determine whether such circumstances are "extraordinary and compelling." U.S.S.G. § 1B1.13(b)(6).

Moreover, in § 3582(c)(1)(A), Congress explicitly directed the courts to consider sentence reductions for "extraordinary and compelling reasons" and empowered the Sentencing Commission to issue policy statements defining those circumstances. Congress then dictated, in 28 U.S.C. § 994(t), that "[t]he Commission, in promulgating general policy statements regarding the sentencing modification

15

provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." Id.  The only explicit limitation Congress chose to impose on the Commission is that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." Id.; see Concepcion v. United States, 597 U.S. 481, 494 (2022) ("The only limitations on a court's discretion to consider any relevant materials at an initial sentencing or in modifying that sentence are those set forth by Congress in a statute or by the Constitution . . . [and] Congress is not shy about placing such limits where it deems them appropriate.").  The fact that Congress chose not to limit a court's ability to consider nonretroactive changes in the law in a motion under § 3582(c)(1)(A) is telling.

Finally, Section 1B1.13(b)(6) does not contravene the Third Circuit's decision in Andrews.  The United States Supreme Court has recognized that "[a] court's prior judicial construction of a statute trumps an agency construction otherwise entitled to Chevron deference *only if* the prior court decision holds that its construction follows from the unambiguous terms of the statute and thus leaves no room for agency discretion." National Cable & Telecomms. Ass'n v. Brand X Internet Servs., 545 U.S. 967, 982 (2005) (emphasis added).  That is not the case here.  As noted above, at the time Andrews was decided, the Sentencing Commission had not yet promulgated the amendments to the Guidelines.  And, the Third Circuit did not call into question the Commission's congressionally granted authority under 28 U.S.C. § 994(t) to create such Guidelines and define what constitutes "extraordinary and compelling circumstances."  In fact, while noting that the phrase "extraordinary and compelling" is "amorphous," the Third Circuit remarked that the Commission's policy statements "shed[] light on the meaning of extraordinary and compelling reasons" and can "guide discretion without being conclusive." Andrews, 12 F.4th at 260 (quotations omitted).  The Third Circuit further emphasized that § 3582(c)(1)(A) itself directs that all sentence reductions must be "consistent with applicable policy statements issued by the Sentencing Commission."  18 U.S.C. § § 3582(c)(1)(A).  Id. at 260 n.4.  Finally, the Court took care to point out that although nonretroactive sentencing reductions, under the then-existing policy statements,

16

were not extraordinary and compelling reasons, such reductions were not irrelevant to the sentence reduction inquiry and may be legitimately considered in motions under § 3582(c)(1)(A).  Id. at 262.  Ultimately, Andrews left open the possibility that an amendment by the Sentencing Commission could require a different outcome.

In sum, I find that section 1B1.13(b)(6) of the Sentencing Guidelines aligns with Congressional statements set forth in Section 403(b) of the First Step Act, 18 U.S.C. § 3582(c)(1)(A)(i), and 28 U.S.C. § 994(t).  Keeping in mind that each motion for compassionate release requires an individualized assessment of all attendant facts, I find that, in this particular case, Ali has established extraordinary and compelling circumstances.

First, Ali's sentence is, without question, unusually long.  Ali received thirty-two years' imprisonment for three robberies occurring over the course of four and a half months.  Ali brandished a handgun in only the third robbery.  While these crimes were serious offenses that merited severe punishment, Congress's passage of the First Step Act precluding stacking of § 924(c) sentences constitutes a clear recognition that Ali's current sentence goes beyond what is sufficient and may be a "greater than necessary" imposition of sentence.  18 U.S.C. § 3553.  Indeed, Ali's sentence is more than double what Congress has now deemed an adequate punishment for comparable § 924(c) conduct.

Second, it is undisputed that Ali has served over seventeen years, which, combined with his good time credit, gives him a total time served of more than nineteen years.  As such, he has served the requisite ten years required by section 1B1.13(b)(6).

Finally, there is a clear change in the law that has produced a gross disparity between the sentence being served and the sentence that would likely be imposed today.  As noted above, Congress amended 18 U.S.C. § 924(c) to mitigate the stacking of § 924(c) charges.  Had Ali been sentenced under these amendments, his mandatory minimum would have been only fourteen years, far more than he has already served.  Even if the Government had not dropped one of the § 924(c) counts, as it did at the original sentencing, Ali would have faced only twenty-one years, which is still eleven years less than

17

what he actually received. Considering Ali's deteriorating health conditions in conjunction with his unusually long sentence, I find that he has articulated extraordinary and compelling reasons for purposes of § 3582(c)(1)(A)(i).

### C. Section 3553(a) Factors

My inquiry under the compassionate release statute does not end at this juncture. I can only grant Ali's requested relief if, after considering the factors set forth in 18 U.S.C. § 3553(a), I find that Ali is not a danger to the safety of any other person or to the community and that the requested relief is justified under the § 3553(a) factors. U.S.S.G. § 1B1.13(a). These factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to (a) reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense, (b) afford adequate deterrence to criminal conduct, (c) protect the public from further crimes of the defendant, and (d) provide the defendant with needed education or vocational training, medical care, or other correctional treatment in the most effective manner; and (3) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. 18 U.S.C. § 3553(a)(1), (a)(2), (a)(6).

The nature and circumstances of the offenses—three armed robberies, one of which involved Ali's personal brandishing of a handgun—are undoubtedly serious and violent warranting a substantial period of incarceration. Nonetheless, being incarcerated for seventeen years is a substantial loss of liberty and adequately addresses the nature of the offense.

I have also considered Ali's criminal history throughout his youth and young adult life and note that most of his crimes involved theft offenses. The Government has repeatedly observed that his criminal history "appears to have been motivated by his long struggle with substance abuse starting in the late 1970s and including an addiction to heroin." (Govt. Opp'n, ECF No. 201, p. 3.); see also id. at 15.) The Government further remarks that Ali has remained entirely drug-free during his period of incarceration.

18

As to Ali's characteristics, the Government notes that during his already lengthy incarceration, he has had no disciplinary infractions, characterizing his prison record as "excellent." (Govt. Opp'n, ECF No. 201, p. 16.) While such rehabilitation alone is not an extraordinary and compelling circumstance, the Amendments to the Sentencing Guidelines state that "rehabilitation of the defendant while serving the sentence may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted." U.S.S.G. § 1B1.13(d); see also 28 U.S.C. § 994(t). As such, Ali's positive prison record and substance addiction rehabilitation, combined with his age (sixty-three) and his multitude of health issues all provide compelling reasons as to why he would no longer be a danger to the community if released.

Turning to the next § 3553(a) factor—which includes the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence to criminal conduct, protect the public from further crimes, and provide the defendant with needed education, care, or training—I find that Ali's significant period of imprisonment addresses all of these objectives. As discussed above, had Ali been sentenced today for comparable offenses, his mandatory minimum would be fourteen years (for two § 924(c) offenses) or twenty-one years (for three § 924(c) offenses), reflecting Congress's belief of what constitutes an appropriate sentence for this type of offense. This period of incarceration takes into consideration the seriousness of the conduct, respect for the law, and a just punishment. Moreover, given both parties' understanding that Ali's criminal actions were motivated by substance addiction, the absence of that addiction suggests that he will not recidivate. His exemplary conduct while incarcerated also addresses the education, care, and training component of § 3553(a). In short, nothing in the record leads me to believe that requiring Ali to serve another fifteen years—until he is approximately eighty years old—would lead to any further punitive, deterrent, or rehabilitative goals.

With respect to the need to avoid unwarranted sentencing disparities, I note that Ali was indicted along with his co-defendant. While Ali brandished a gun in only one of the three robberies, the co-

19

defendant brandished a gun in all three.  The co-defendant cooperated with authorities, and he received a sentence of 120 months' imprisonment (twenty-two years less than Ali), was released in 2015, violated supervised release, and was released again in 2017.  Although the cooperation aspect of the co-defendant's sentence makes it difficult to compare his sentence with Ali's, it is worth noting the huge disparity for like crimes.

Finally, while the burden rests with Ali to prove an entitlement to compassionate release under the § 3553(a) factors, I find it compelling that the Government's only statement as to these factors is that "while Ali has a long history of criminal activity and convictions, likely fueled by substance abuse issues, he has an excellent record while incarcerated." (Govt. Opp'n, ECF No. 201, p. 15–16.)

Although I do not diminish the violent nature of Ali's crimes, I conclude that, on balance and given the passage of time and his substance addiction rehabilitation, he is unlikely to be a danger to the safety of any other person or to the community and the requested relief is justified under the enumerated § 3553(a) factors.  Moreover, Ali has presented a proposal for his release through a letter from his niece, which describes a plan for his employment and living situation.  Other members of his family have attested to their commitment to ensuring his sobriety and focus on positive living.  These letters of family support provide additional reasons for my decision to grant compassionate release.

In light of the foregoing, I will grant Ali's Motion for Compassionate Release and reduce his sentence to a total term of imprisonment of twenty-one years, which is what he would have received if he were sentenced today and if the Government had not voluntarily dismissed one of the section 924(c) charges.  An appropriate Order follows.